## Daniel WHITE, Appellant,

v.

## UNITED STATES, Appellee.

### Nos. 88–481, 88–482.

District of Columbia Court of Appeals.

Submitted May 17, 1989.

Decided Sept. 29, 1989.

Boniface K. Cobbina, appointed by this court, was on the brief for appellant.

Jay B. Stephens, U.S. Atty., and Michael W. Farrell, Asst. U.S. Atty. at the time the brief was filed, and Elizabeth Trosman, Glenn A. Fine, and Thomas J. Tourish, Jr., Asst. U.S. Attys., were on the brief for appellee.

Before ROGERS, Chief Judge, MACK, Associate Judge, and PRYOR, Senior Judge.

MACK, Associate Judge:

Appellant, Daniel White, appeals from an order revoking his probation. He contends that his probationary term had expired and that the trial court therefore lacked authority to revoke probation. At issue is whether White's probationary term was automatically tolled when he was imprisoned for another offense. We hold that, under D.C. Code § 24–104 (1988 Supp.), it was not, and we therefore reverse.

---

## I.

On January 27, 1987, appellant pled guilty before Judge Robert Scott to charges of taking property without right, D.C.Code § 22–3816 (1988 Supp.), and failure to appear at a status hearing, D.C.Code § 23–1327 (1981). He was sentenced that same day to two consecutive ninety-day terms of imprisonment. Execution of these sentences, however, was suspended, and appellant was placed on supervised probation for one year.

Approximately ten months later, on November 18, 1987, appellant was arrested and, the following day, charged with distribution of a controlled substance (dilaudid), D.C.Code § 33–541(a)(1) (1981). He was incarcerated at the District of Columbia Jail pending trial.[1] On February 1, 1988, he was brought before Judge Steffen Graae, and pled guilty to the distribution charge; he remained in prison while awaiting sentencing.[2]

On March 10, 1988, the probation office notified Judge Scott that appellant had pled guilty to another offense.[3] On March 18, 1988, approximately fifty days after the scheduled expiration of appellant's probation, the trial judge issued an order to appellant to show cause why his probation should not be revoked. A hearing on this order was held, and on April 15, 1988, the trial court revoked appellant's probation and reinstated the original sentence.

## II.

■ D.C.Code § 24–104 (1988 Supp.) governs the revocation of probation. It provides, in pertinent part, that, *"At any time during the probationary term ...* the court may revoke the order of probation and cause the rearrest of the probationer...."* (emphasis added).[4] We have understood this provision, by its plain terms, to require the court to act "during the probationary term." While we have not demanded that revocation in fact be completed during the period of probation, we have consistently held that a trial court must initiate revocation proceedings, or formally extend the length of probation, during the term originally set for probation. *See Wallace v. United States,* 475 A.2d 401 (D.C.1984) (court issued, during probationary term, *ex parte* order temporarily extending probation period); *Dent v. District of Columbia,* 465 A.2d 841 (D.C. 1983) (court issued show cause order during probationary term); *Cooper v. United States,* 48 A.2d 771 (D.C.1946) (court issued arrest warrant during probationary term and thereafter periodically extended probation). Where the trial court fails to take

---

1. Bail was set at a $2000 surety bond, but was apparently not met.

2. Appellant was ultimately sentenced on April 13, 1988 to a term of imprisonment on this charge.

3. No explanation was given as to why, where appellant had been arrested in the District of Columbia and placed in a District of Columbia jail, nearly four months passed before the trial judge was informed of appellant's subsequent offense. As we stated in *Jacobs v. United States,* 399 A.2d 38, 43 (D.C.1979) (a case in which there was a prejudicial delay in revocation of the appellant's probation and in which we noted "a breakdown in communication between the District of Columbia Department of Probation and the Superior Court"), "It is imperative that the court be kept informed 'of the circumstances and conduct of probationers.'" (quoting D.C. Code § 24–103 (1973)).

4. The full text of D.C.Code § 24–104 states:
   Upon the expiration of the term fixed for such probation, the probation officer shall report that fact to the court, with a statement of the conduct of the probationer while on probation, and the court may thereupon discharge the probationer from further supervision, or may extend the probation, as shall seem advisable. At any time during the probationary term the court may modify the terms and conditions of the order of probation, or may terminate such probation, when in the opinion of the court the ends of justice shall require, and when the probation is so terminated the court shall enter an order discharging the probationer from serving the imposed penalty; or the court may revoke the order of probation and cause the rearrest of the probationer and impose a sentence and require him to serve the sentence or pay the fine originally imposed, or both, as the case may be, or any lesser sentence. If imposition of sentence was suspended, the court may impose any sentence which might have been imposed. If probation is revoked, the time of probation shall not be taken into account to diminish the time for which he was originally sentenced.

such action, it loses its jurisdiction to revoke probation upon expiration of the probationary term. *Sumpter v. United States,* 564 A.2d 21, 24 (D.C.1989); *see also Jones v. United States,* 560 A.2d 513, 516 (1989).

In the present case, Judge Scott was apparently not notified of appellant's subsequent arrest until some time after appellant's probationary term had expired. The trial court thus took no measures during the probationary term to preserve its jurisdiction.

■ The government acknowledges that, under ordinary circumstances, the failure to act during the probationary term would deprive the court of its authority to revoke probation after the probationary term had ended. The government argues, however, that where, as here, a probationer has been imprisoned while on probation, that the probationary term should be tolled for the duration of the probationer's incarceration, and should begin to run again only upon the probationer's release.[5] Under this theory, appellant's probationary term would have been tolled as of November 19, 1987, when appellant was imprisoned pending trial on the charge of distribution, and, as appellant has remained incarcerated since that time, would not have begun running

again, and could not have expired, prior to revocation.[6]

■ In *Sumpter, supra,* a similar issue was presented to this court. In that case, the appellant had been arrested for a subsequent offense while on probation, but, as in the present case, his probation had not been revoked until after his probationary term would have ordinarily expired. The government argued, however, that because the appellant had allegedly concealed his probation violation from his probation officer, the probationary term should have been tolled from the time of the concealment. We rejected this argument, holding that neither the governing statute nor our case law allowed room for such an exception. *Sumpter, supra,* 564 A.2d at 24. We find this to be true in the present case as well: D.C.Code § 24–104 is clear in its requirement that probation is to be revoked "during the probationary term," and our decisions consistent in finding, accordingly, that the trial court must take some formal action during the probationary term in order to preserve its jurisdiction to subsequently revoke probation. While we are aware that certain jurisdictions have statutes which expressly state that probation is to be tolled upon the probationer's incarceration,[7] our statute provides for no such exemption, *see supra* note 4. Whatever the merits of such a tolling provision, we

---

5. We note that this assertion has been articulated for the first time on appeal and was not relied upon by either the government or the trial court in the revocation proceedings.

6. The government also asserts that there was evidence that appellant had left the jurisdiction during the time he was on probation, and that, alternatively, such abscondence would toll the probationary term. Even were we to hold that abscondence could, in general, toll the probationary term—and we do not decide this issue— we think it clear that it did not do so here. On September 14, 1987, during the probationary term, the trial court issued a show cause order based on allegations that appellant had not reported for probation. On October 5, 1987, a hearing was held on this matter, and appellant acknowledged that he had been in Florida. Nonetheless, Judge Scott discharged the show cause order and continued appellant on the same term of probation. To hold that the probation period was tolled where the trial judge, aware of the circumstances, explicitly refused to extend the duration of probation, we believe, would be, at the very least, inappropriate.

7. *E.g.,* Ohio Rev.Code Ann. § 2951.07 (Baldwin 1989) ("If the probationer ... is confined in any institution for the commission of any offense whatever, the probation period ceases to run until such time as he is brought before the court for its further action."); *cf. Williams v. State,* 50 Wis.2d 709, 184 N.W.2d 844, 846 (1971) (relying on state statute which provided that "[t]he period of probation or parole ceases running upon the offender's absconding or committing a crime or some other violation of the terms of his probation or parole"). *See generally* Annotation, *Power of Court, After Expiration of Probation Term, to Revoke or Modify Probation for Violations Committed During the Probation Term,* 13 A.L.R.4th 1240, 1292–93 (1982).

The government relies heavily on federal cases which have held that probation is automatically tolled during periods of imprisonment. *See, e.g., United States v. Lancer,* 508 F.2d 719, 733 n. 42 (3rd Cir.1975); *United States v. Gerson,* 192 F.Supp. 864, 865 (E.D.Tenn.1961), *aff'd* 302 F.2d 430 (6th Cir.1962). In the probation revocation context, however, we have often employed a more narrow approach than our

can only observe, as we did in *Sumpter, supra,* 564 A.2d at 24 that "[i]f an exception to the statute is thought desirable, it is for the legislative branch, and not the judiciary, to fashion one."[8]

*Reversed.*

PRYOR, Senior Judge, concurring:

Given our recent decision in *Sumpter v. United States,* 564 A.2d 21 (D.C.1989), I concur in the majority opinion.

---

federal counterparts. Thus, we observe, for example, that the federal probation statute previously in effect, 18 U.S.C. § 3653 (1983), unlike our own, provided that probation could be revoked at any time during the maximum probationary term of five years, even though the actual probationary term may have expired; and that some federal courts have been willing to hold that probation is tolled *whenever* the probationer is in violation of the conditions of probation. *See, e.g., Lancer, supra,* 508 F.2d at 734, *United States v. Green,* 429 F.Supp. 1036, 1038 (W.D.Tex.1977). We also note that the federal statute governing probation revocation has recently been revised, and the new statute, while otherwise placing greater restrictions on the time during which probation can be revoked, expressly provides that the term of probation does not run during any period in which the probationer is imprisoned for a period of at least thirty days. 18 U.S.C. §§ 3564, 3565 (Supp. V 1988).

8. We note that the tolling of probation during periods of imprisonment also raises an issue of notice. In previous cases involving the revocation of probation after term, we have indicated our concern that timely notice be given the probationer that the court intends to revoke his probation. Thus, in *Dent, supra,* we stated that where there is no formal extension of the probationary period, the trial court must take "appropriate steps" prior to the expiration of probation "to put the probationer on notice that probable cause exists for revocation of probation." 465 A.2d at 843 (holding that issuance of an order to show cause satisfied this requirement). Similarly, we have maintained that *ex parte* extensions of probations by a trial court should be

made only when required by "exigent circumstances." *Valentine v. United States,* 394 A.2d 1374, 1376 (1978); *see also Wallace, supra,* 475 A.2d at 403–04 (finding that an *ex parte* extension of probation issued seven days prior to the expiration of the probation period, and which was intended as a temporary measure until a full hearing could be held, met this standard). *Cf. Nelson v. United States,* 479 A.2d 340, 342 (D.C.1984) (noting that loss of liberty associated with revocation of probation requires that probationer be accorded due process; hearing is required even if probationer is convicted of another crime, for trial judge has discretion not to revoke probation if "circumstances in mitigation suggest that the violation does not warrant revocation" (citation omitted)).

In theory, however, if imprisonment automatically tolled probation, a probationer could, for instance, commit an offense with six months remaining on his probationary term, be sentenced to ten years in prison for the crime, and find himself subject to revocation of probation and reimprisonment (his offense having also constituted a violation of probation) at any time during the six months following his release a decade later, even though he may have been given no indication at any earlier point that the court intended to revoke his probation. *Cf. Rease v. Commonwealth,* 227 Va. 289, 316 S.E.2d 148, 151–52 (1984) (where court promptly issued, during probationary term, warrant charging violation of probation followed by a detainer, statutory period for revocation was suspended during probationer's six-year incarceration in another jurisdiction, and court retained jurisdiction to revoke probation upon probationer's release from prison).